IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA KOBA, | ) | CASE NO: 1:13CV33 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| RUBY TUESDAY, INC., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | **AND ORDER**  [Resolving Docs. 23 & 35] |

This is a trip and fall negligence case.  Plaintiff Linda Koba ("Plaintiff" or "Koba") fell and was injured while assisting her sister to enter a restaurant operated by Defendant Ruby Tuesday, Inc. ("Defendant" or "Ruby Tuesday"). In her Complaint, Koba alleges that a mat in the vestibule area of the restaurant "had not been properly laid and was was buckled," which caused her to trip and fall. Doc. 1-1, p. 1, ¶ 3.[1]  The parties have filed Cross-Motions for Summary Judgment, which have been fully briefed.[2]

For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. 23) is **DENIED** and Plaintiff's Motion for Partial Summary Judgment (Doc. 35) is **DENIED**.

---

[1] The case was originally filed in the Lorain County Court of Common Pleas and was removed to this Court.  The parties have consented to the jurisdiction of the undersigned. Doc. 1, 12.

Document citations are to ECF page numbers throughout this order.

[2] On August, 19, 2013, Defendant Ruby Tuesday, Inc. ("Defendant" or "Ruby Tuesday") filed its Motion for Summary Judgment. Doc. 23.  Koba filed an Opposition to Ruby Tuesday's motion (Doc. 30) and, on December 2, 2013, filed a Motion for Partial Summary Judgment (Doc. 35), to which Ruby Tuesday filed an Opposition. Tr. 38.

1

## I. Background Facts

On Saturday, December 4, 2010, around 5:10 p.m. Koba visited Ruby Tuesday's restaurant on Lorain Road in North Olmsted, Ohio, with her sister and brother-in-law to celebrate Koba's birthday.[3]  Doc. 1-1, p. 1; Doc. 27-1, Linda Koba Deposition ("Koba Depo") at 63:6-9, 64: 12-13; Doc. 28-1, Donovan Barger Deposition ("Barger Depo") at 10:8-11; Donovan Barger Affidavit ("Barger Aff.") at ¶3.  This was Koba's fourth or fifth visit to the restaurant.  Koba Depo. at 40:13-17.  This visit, however, was the first time Koba's sister had been out of the house since a hip replacement surgery several weeks earlier.  Id. at 63:12-23. As a result of the surgery, her sister was using a walker.  Id.

When they arrived at the restaurant, Plaintiff helped her sister out of the car and to her walker and then followed her sister up a ramp to Ruby Tuesday's outer door.  Id. at 72:2-13. Plaintiff's sister went through the front door first with her walker and Plaintiff followed her into the restaurant's foyer.  Id. at 72:22-23, 74:21-24.[4]  Patrons had to walk through the foyer in order to reach the inner door to the restaurant.  Id. at 42:2-15.  A mat[5] was laid diagonally on the ceramic tile floor between the outer and inner doors.  Koba Depo. at 42:22-25, 43:1, 44:1, 50:20-25, 51:1-4 & Exhibit A.  In order to open the inner door for her sister, Plaintiff, moving sideways, scooted past her sister on her sister's left side.  Id. at 77:22-25, 78:1-8.  The distance between the wall and her sister's left side, i.e., the space in which Koba maneuvered past her

---

[3] The affidavit of Sharon Reiman ("Reiman affidavit") submitted by Koba indicates that the two women were sisters-in-law rather than sisters. Doc. 30-3, ¶1. Accordingly, it is unclear whether Ms. Reiman is Koba's sister or sister-in-law. However, that factual discrepancy does not affect consideration of the Cross-Motions for Summary Judgment. Ms. Reiman will be referred to as Koba's sister herein.

[4] Koba's brother-in-law had opened the outer door for both women and was behind them. 72:11-23, 73:25, 74:1-2.

[5] Plaintiff states that there was one mat in the foyer between the outer and inner doors. Koba Depo. at 87:17-18. Defendant states there were two mats. Barger Aff. ¶ 5. This difference does not affect consideration of the Cross-Motions for Summary Judgment and the mat or mats will be referred to herein as "the mat."

sister, was about one to approximately one and one half feet. Id. at 78: 21-24. At the time, patrons exiting the restaurant were walking on the mat to Koba's sister's right side. Id. at 113:22-24. After she squeezed by her sister and before she reached the inner door, Koba fell forward and her right arm came in contact with the floor. Id. at 78:6-25, 79:1-5, 80:7-16, 81:2-11.

Plaintiff states that she fell as a result of catching her foot under a ripple in the edge of the mat on the floor of the foyer. Id. at 97:8-21. Prior to the fall, Plaintiff did not look down,[6] she did not feel any unusual sensation in her feet, and she did not feel either of her feet catch on anything. Id. at 76:11-17, 79:18-21, 81:17-24. After she fell, she was helped to a chair. Id. at 85:23-25. While seated, she observed the mat and noticed that there were ripples on the edge of the mat. 87:9-16. Plaintiff states that ripples about four inches high went down the length of the mat on both sides. Id. at 97:12-25, 98:1-2. Koba's sister also stated that she noticed the floor mat was rippled after Koba fell. Reiman Affidavit at ¶5. Koba's sister stated that her walker did not catch on the mat or cause the mat to ripple. Id. at ¶6.

Donovan Barger ("Barger") was Ruby Tuesday's store manager on duty on the day of Koba's fall. Doc. 28-1, Barger Depo. at 10:8-11, 10:16-19. Barger was not in the foyer at the time Koba fell. Barger Depo. at 62:7-9. However, after Koba fell, Barger filled out an Incident Detail Report. In the "Accident Description" portion of the report, Barger typed, "Guest stated she was helping friend/sister? with a walker enter the store. As she was doing this she tripped on rug. She fell face first and landed on arm/shoulder. Said she broke her arm. Indication from EMS was separated shoulder." Id. at 20:20-25, 21:1-3, Ex. 2.[7]

---

[6] Koba testified she was unable to see the mat when squeezing by her sister. Id. at 90:8-12.

[7] Barger testified that the information in the Accident Description was given to him by "somebody from Linda Koba's party." Id. at 22:9-19.

The mat in the foyer was supplied by a third-party linen supply company. Id. at 39:10-13, 15:9-13. The mat had a carpet surface and a rubber backing.[8] Barger Aff. ¶ 5. On the day Koba fell, Barger had placed the mat on the floor of the foyer before the restaurant opened. Barger Aff., ¶ 5. He states that, when he placed the mat that day, there were no wavy edges nor was there any buckling. Id., ¶¶ 5, 9.[9] The restaurant opened for business that day at 11:00 a.m. and closed at 11:00 p.m. Barger Dep. at 48:19-23. There were customers coming in and out of the restaurant throughout that time. According to Barger, the foyer is large enough to accommodate several people exiting and entering the restaurant at the same time. Id. at 48:24-25, 50:1-4, 50:24-25, 51:1-19. Barger testified that it was expected that handicapped individuals using wheelchairs, walkers, and canes would come in and out of the restaurant. Barger Depo. at 9:3-17.

The restaurant employee responsible for maintaining the foyer is the host assigned to that area. Id. at 49:16-20. It was Ruby Tuesday policy for all employees to come through the foyer when arriving for work. Id. at 46:23-24. Employees are expected to report any hazards they observe. Id. at 45:20-22, 46:2-5. According to Barger, on the day Koba fell and prior to her fall, no employee reported any problem with the mat in the foyer, nor did any patron report any such problem. Barger Aff. ¶ 14.

All three of the Ruby Tuesday stores Barger has worked at use the same third-party company to supply mats. Barger Depo. at 40:14-17. Barger was aware of other customers falling in Ruby Tuesday foyers where similar mats were placed but was not sure if those other customer falls were due to the mats. Id. at 62:24-25, 63:3-10.

---

[8] Koba stated that the mat had green transparent plastic around the edge. Koba Depo at. 88:23-25, 89:1-3.

[9] Koba acknowledged that she doesn't know if the mat was was rippled at the time when it was laid down. Koba Depo. at 106:6-8.

4

After the accident, Barger was asked by a Ruby Tuesday corporate claim representative if the rug was in disrepair at the time of the accident and he responded, "not to my knowledge." Barger Depo. at 15:9-13. The third-party company replaced the mats on a weekly basis. Barger Aff. ¶ 6. The mat on which Koba alleges she tripped was replaced within several days of the accident. Id.[10]

## II. Law & Analysis

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010) (citations omitted). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After a moving party has carried its initial burden of showing that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion

---

[10] Barger did not state that he or any other employee inspected the mat after Koba fell and neither party has submitted any photographs of the mat taken after the accident.

5

...

for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Further, "the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

Moreover, it should be noted that, under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mere conclusory allegations "are not evidence and are not adequate to oppose a motion for summary judgment." *Miller v. Aladdin Temp–Rite, LLC,* 72 F. App'x 378, 380 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). It is well settled that "[w]hen ... conclusions of law appears in an affidavit ... the extraneous material should be disregarded, and only the facts considered."[11] *F.R.C. Int'l, Inc. v. United States,* 278 F.3d 641,

---

[11] To the extent the affidavits cited in this order contain conclusions of law, such conclusions have been disregarded and only the facts considered.

643-44 (6th Cir. 2002) (*citing A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.,* 650 F.2d 118, 121 (6th Cir.1981) and *Adair v. Koppers Co.,* 741 F.2d 111, 114 (6th Cir.1984)).

### Cross-Motions for Summary Judgment

In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991)(citing *John v. State of La. (Bd. of Tr. for State Coll. & Univ.),* 757 F.2d 698, 705 (5th Cir.1985)).  The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.,* 929 F.2d at 248. The Court reviews each party's motion separately, determining, for each side, whether a judgment may be entered in accordance with the standards of Rule 56 and both motions must be denied if the Court finds that there is a genuine issue of material fact. *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 732 (S.D. Ohio 2006)

**B.  Ohio Premises Liability Law**

Ohio law governs this case.  In order to establish a claim for negligence, a plaintiff must show:  (1) a duty on the part of the defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach.  *Jeffers v. Olexoi,* 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).  In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed.  *Glandon v.*

7

*Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 414, 417, 644 N.E.2d 287; *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994).

The parties agree that, under Ohio law, Plaintiff was as a "business invitee" for purposes of determining the duty Defendant owed to her. Doc. 23, p. 8; Doc. 30, p. 7. "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio University* (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611.

Business owners owe business invitees a duty of ordinary care to maintain the premises in a reasonably safe condition so that customers are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). However, a business owner is not an insurer of a customer's safety against all types of accidents that may occur on its premises. *Id.*; *see also Johnson v. Wagner Provision Co.,* 141 Ohio St.584, 589 (1943). The fact that an invitee falls while on a shopkeeper's premises does not give rise to an inference or presumption of negligence. *Hodge v. K-Mart Corp.* (Jan. 18, 1995), Pike App. No. 93CA528, unreported, citing *Parras v. Standard Oil Co.* (1953), 160 Ohio St. 315, 116 N.E.2d 300.

Ohio courts have held that "a plaintiff may prevail in a slip-and-fall negligence claim in one of three ways." *Dowling v. The Cleveland Clinic Foundation*, 593 F.3d 472, 476-477 (6th Cir. 2010). In *Dowling*, the Sixth Circuit quoted an Ohio opinion describing the three theories:[12]

> "The law in the state of Ohio is clear that in order for a plaintiff to recover damages from a slip and fall accident as a business invitee, the following must by established:
>
>> 1. That the defendant through its officers or employees was responsible for the hazard complained of; or
>>
>> 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

---

[12] *Combs v. First Nat'l Supermarkets, Inc.*, 105 Ohio App. 3d 27, 663 N.E.2d 669, 670 (Ohio App. 1995).

> 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care."

Id. In *Dowling,* one of the plaintiffs, a patient, slipped in a puddle of water in a hallway adjacent to defendant's cafeteria. Plaintiffs did not contend that defendant had created the puddle, i.e., plaintiff did not rely on the first theory of recovery. Instead, they relied on the third theory, constructive notice. In affirming the District Court's order entering summary judgment for the defendant, the Sixth Circuit noted that evidence as to how long a hazard existed is mandatory in a constructive notice case and that plaintiffs failed to present any evidence concerning how long the puddle had been in the hallway. 593 F.3d at 477.

**C.    Defendant's Motion for Summary Judgment**

Ruby Tuesday, citing *Dowling v. The Cleveland Clinic Foundation, supra,* argues that it is entitled to summary judgment because there is no evidence it: (1) was responsible for the mat being improperly placed; or (2) had knowledge that the mat was improperly placed and that it failed to warn; or (3) that the improperly placed mat had existed for a sufficient length of time to reasonably justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care. Doc. 23, p. 2. Ruby Tuesday argues that, in order for Koba to prevail, she must show that Defendant created, was aware of, or had constructive knowledge of a hazard. Doc. 23, p. 8.

**1.    Responsibility for the hazard**

Under the first theory set forth in *Dowling*, a plaintiff may recover when the plaintiff establishes that the defendant is responsible for the hazard complained of.   In its Memorandum in Support of its Motion for Summary Judgment, Ruby Tuesday addresses at some length the actual notice and constructive notice theories under which a plaintiff may recover but it disposes

of the responsibility theory summarily by asserting, "Plaintiff has failed to establish that Ruby Tuesday was responsible for an improperly placed mat in the foyer of the restaurant . . . ." Doc. 23, p. 9. While Ruby Tuesday does not explain in its Memorandum the basis for this conclusion, it appears that Ruby Tuesday is relying on the statements made by Barger in his Affidavit that there were no wavy edges to the mat, nor was it buckled, at the time he placed it on the floor before the restaurant opened for the day. Barger Aff. ¶¶. 5, 9.

Plaintiff's Opposition counters that Barger's Affidavit is itself evidence of Ruby Tuesday's responsibility because Barger admits that he placed the mat on the floor in the foyer, a heavily trafficked area, on the day Koba fell. Doc. 30, pp. 8-9. Plaintiff argues that, in this case, "A jury can find that the floor mat bunched along the edges as a natural result of the location of the floor mat in a high traffic area . . . and as a result of Ruby Tuesday's failure to secure the edges of the floor mat . . ., it created a hazardous condition." Id., p. 9.[13]

Plaintiff relies on the Ohio Tenth District Court of Appeals' opinion in *Tandy v. St. Anthony Hospital*, Franklin Cty. App. No. 88AP-551, 1988 WL 129161 (Nov. 29, 1988). In *Tandy*, the plaintiff, who was leaving the hospital, tripped over a doormat that defendant had placed outside its door. Plaintiff claimed that the doormat had become bunched up into a hump, which he had not noticed before he fell. The trial court entered summary judgment for the defendant hospital based on the lack of evidence that the defendant had actual knowledge of any danger associated with the doormat. In reversing, the Court of Appeals stated,

> The defendant and the trial court fail to take into account a critical distinction that exists between hazardous conditions created by the owner or occupier of the premises and those hazardous conditions created by the act of a third person . . . .

---

[13] Plaintiff also argues that "Ruby Tuesday's building code violations are sufficient evidence of negligence to defeat summary judgment." Doc. 30, p. 9. In support of this argument, Plaintiff submits the report of its expert, Richard Zimmerman ("Zimmerman"), an architect, who opines that Ruby Tuesday violated the Ohio Building Code because the mat was not "securely attached." Doc. 30-1, p. 4. The Court is not persuaded that the building code provision cited by Zimmerman is applicable to the facts here.

**\*\*\***

> This being a motion for summary judgment against plaintiff, he is entitled to have the evidence construed most strongly in his favor. When the evidence is so construed, a "genuine issue of material fact" exists, and reasonable minds can reach different conclusions. Thus, summary judgment was improper. It is not defendant's lack of notice which is determinative, but, rather, whether it negligently placed the doormat in such a position as to create a dangerous or hazardous condition. The evidence presented by defendant states merely that no complaints have been received, and there were no prior reported falls. This does not negate defendant's creating a dangerous condition, which caused plaintiff to fall and be injured.

*Tandy*, 1998 WL 129161 at *2. Similarly, in *Schuley v. Consolidated Stores Corp.*, Mahoning App. No. 98 CA 138, 2000 WL 310547 (March 24, 2000), the Seventh District Court of Appeals held that summary judgment for the defendant was improper where plaintiff alleged that defendant created a dangerous condition by placing a rug inside the entrance to the store, which plaintiff fell over and which was observed wedged under the door after plaintiff's fall. The *Schuley* defendant argued that it had no notice or superior knowledge of the condition. However, the *Schuley* court noted that the facts before it were similar to those in *Tandy* and defendant's lack of actual or constructive notice was not determinative.

In addition to *Tandy and Schuley*, Ohio courts of appeal in other cases have concluded that summary judgment in favor of the defendant premises owner or operator is improper on facts very similar to this case, i.e., when the defendant placed a rug or mat, which subsequently became rumpled or curled, causing the plaintiff to trip and fall. See *Simeone v. Schwebel Baking Co.*, Cuyahoga Cty. App. No. 90668, 2008-Ohio-5254 (October 9, 2008) (plaintiff tripped over commercial mat on floor of defendant's foyer, which was "curled up"); *Whitley v. Natl. City Bank*, Cuyahoga Cty. App. No. 90095, 2008-Ohio-131 (January 17, 2008) (plaintiff tripped on mat placed over carpeting where the mat's left corner "was flipped over"); *Zimmerman v. The Kroger Co.*, Jackson Cty. App. No. 00CA002, 2000 WL 1175562 (Aug. 9, 2000) (plaintiff

11

tripped over mat in vestibule, which had crept from the position in which it was placed such that its edge stood off the floor); and [*Barlow v. Thorne Foods, Inc.*, Carroll Cty. App. No. 505, 1985 WL 6987 (June 20, 1985)](#) (plaintiff tripped on unattached carpet laid on floor near store exit and noticed that the carpet was "turned up").

Here, it is undisputed that Ruby Tuesday's employee placed the mat in the foyer. Barger Aff. ¶ 5. Similar to *Tandy, Schuley,* and the other rug/mat cases cited above, "It is not defendant's lack of notice which is determinative, but, rather, whether it negligently placed the doormat in such a position as to create a dangerous or hazardous condition." *Tandy*, 1998 WL 129161 at *2. This case is unlike [*Dowling, supra*](#), in which the plaintiff did not contend that the defendant was responsible for placing the puddle of water in which she slipped but relied instead on constructive notice, the third theory of recovery recognized in Ohio slip and fall cases.

Plaintiff has cited evidence concerning the high volume of traffic in the foyer area in which Barger laid the mat and has pointed to evidence that Defendant is aware that multiple people coming in and out of the foyer at the same time can cause a disruption of the mat. Doc. 30, p. 5. Plaintiff's evidence includes Barger's testimony and a Ruby Tuesday internal document that appears to show Defendant's awareness that crumpling of a mat can lead to a guest fall. Doc. 36-1, p.1; Barger Depo. at 16:19-22. Plaintiff testified that, at the time she and her sister were attempting to enter the restaurant from the foyer, other people were simultaneously exiting the restaurant through the inner door and walking on the mat. Koba Depo. at 113:22-24. Barger testified that it was expected that handicapped individuals using wheelchairs, walkers, and canes would come in and out of the restaurant. Barger Depo. at 9:3-17. Barger further testified that he was aware of other customers falling in Ruby Tuesday foyers where similar rugs were placed.

12

Id. at 63:3-10. Additionally, Plaintiff provided records from 2008-2012 of customer falls in Ohio Ruby Tuesday foyers/entrance ways, some falls involving floor mats. Doc. 31-1.

While Ruby Tuesday asserts, citing the Barger Affidavit, that employees would have passed through the foyer on their way to work and that no employee or patron notified it of a problem with the mat on the day in question, no evidence has been presented that any employee of Ruby Tuesday, including the host assigned to the foyer area, actually inspected the condition of the mat at any time during the more than six hours that elapsed between when the mat was placed on the floor and when Koba fell.

On Ruby Tuesday's Motion for Summary Judgment, Plaintiff is entitled to have the evidence construed most strongly in her favor. When the evidence is so construed, a "genuine issue of material fact" exists and reasonable minds can reach different conclusions as to whether Ruby Tuesday negligently placed or maintained the doormat in such a way as to create a dangerous or hazardous condition. Ruby Tuesday's view – that it may not be held liable under the theory that it was responsible for the hazard complained of because the mat was not rippled when its employee placed it on the floor before the restaurant opened – is inconsistent with Ohio law. Because Ruby Tuesday has failed to demonstrate that it is entitled to judgment as a matter of law its Motion for Summary Judgment must be denied.

### 2. Actual and Constructive Knowledge

To recover in a slip and fall case, a plaintiff need only meet the requirements of one of the three theories of recovery set forth above, i.e., responsibility, actual knowledge, *or* constructive knowledge. When a defendant creates a hazardous condition by his own conduct, the plaintiff is not specifically required to show that defendant had knowledge or notice. *Tandy*, *supra*; *Presley v. Norwood*, 36 Ohio St.2d 29 (1973). Since this Court has found that there is a

genuine issue of material fact in this case under the responsibility theory, precluding summary judgment for Ruby Tuesday, it is not necessary for the Court to reach Plaintiff's claims of actual or constructive knowledge. The Court notes, however, that Plaintiff has failed to provide evidence of a genuine issue of material under either of those theories.

First, with regard to actual knowledge, Plaintiff argues that Ruby Tuesday "knew or should have known that the floor mat that caused Ms. Koba to fall had the risk of curling, buckling, or sliding creating an increased risk of customers tripping and falling." Doc. 30, p. 11. A "should have known" or "could have known" test is not an appropriate consideration under an actual notice standard. *Emrick v. Multicon Builders, Inc.*, 57 Ohio St. 3d 107, 111, 566 N.E.2d 1189, 1194 (1991). Thus, Plaintiff fails to provide any evidence of a genuine issue of material fact that Defendant actually knew of the hazard, i.e., actually knew that the mat was rippled, prior to Koba's fall.

Second, with regard to constructive knowledge, Ohio courts "ha[ve] consistently followed *Anaple* [*v. Standard Oil Co.,* 162 Ohio St. 537, 124 N.E.2d 128 (1955),] and held that evidence of how long the hazard existed is mandatory in establishing a duty to exercise ordinary care." Dowling, 593 F.3d at 477, (citing *Combs v. First Nat'l Supermarkets, Inc.,* 105 Ohio App.3d 27, 663 N.E.2d 669, 671 (1995)). Plaintiff argues "Ruby Tuesday knows that every time it places the mat without securing the edges that it is creating a trip hazard." Doc. 30, p. 13. However, Plaintiff provides no evidence as to the length of time the hazard, i.e., the ripples in the mat, existed prior to her fall.

14

**D. Plaintiff's Partial Motion for Summary Judgment is DENIED**

Plaintiff argues that she is entitled to summary judgment in her favor as to liability because there is no dispute that Ruby Tuesday created the dangerous condition that caused her to fall, had direct knowledge that the floor mats it used create a hazardous condition because they buckle, and did nothing to alleviate the hazard that it created. Doc. 35-1, p. 1. Plaintiff contends that Ruby Tuesday should have secured the edges of the mat and that "fixes" to secure the edges of such mats are available for less than $20. Id., p. 5. Ruby Tuesday responds that Plaintiff is not entitled to summary judgment for three reasons: (1) if the floor mat was buckled, the danger was open and obvious;[14] (2) Ruby Tuesday did not breach any duty owed to Plaintiff and had no prior notice of the hazard; and (3) Plaintiff cannot show that Ruby Tuesday's conduct caused her to trip and fall. Doc. 38, p. 5.

Plaintiff's Motion appears to ask this Court to find liability as a matter of law based solely on the fact that Ruby Tuesday's manager placed the mat on the floor without taping down or otherwise securing the edges. Plaintiff cites no case that would support such a position. Accordingly, the Court finds no merit in this argument.[15] Instead, this Court finds that there exist genuine issues of material fact and reasonable minds can reach different conclusions as to whether Ruby Tuesday negligently placed or maintained the mat in such a way as to create a

---

[14] Ruby Tuesday cites *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 725 (6th Cir. 20)12), to support its open and obvious argument. In *Andler,* the Sixth Circuit affirmed the trial court's denial of defendant's motion for judgment as a matter of law filed after a jury verdict for the plaintiff. The Sixth Circuit held that the observability of a hazard "'depends upon the particular circumstances surrounding the hazard' . . . and is 'extremely fact-specific'…." (quoting Ohio cases). In this case, as in *Andler,* the question whether the hazard was open and obvious is a jury issue.

[15] In their briefs on Plaintiff's Motion for Partial Summary Judgment, the parties quarrel as to whether an expert report submitted by Ruby Tuesday (Doc. 34-1) should be considered. Ruby Tuesday states that the report is presented primarily to refute Plaintiff's contention that Ruby Tuesday violated the Ohio Building Code and/or breached its duty of care by failing to tape down the edges of its floor mats. Doc. 38, p. 14. The allegation that Ruby Tuesday violated the Ohio Building Code is not made in Plaintiff's Motion for Partial Summary Judgment and the Court has resolved the issues presented on Plaintiff's Motion on other grounds. Thus, the Court does not address the arguments concerning Defendant's expert report.

dangerous or hazardous condition. Accordingly, Plaintiff's Motion for Partial Summary Judgment must be denied.

### E. Plaintiff's Request To Strike Barger's Affidavit

In its Memorandum in Support of its Motion for Summary Judgment, Ruby Tuesday asserts that Plaintiff cannot "prove what caused her to fall" (Doc. 23, p. 6) and that "Plaintiff cannot state with certainty that she tripped over the mat." Id., p. 10. As support for those assertions, Ruby Tuesday relies on the Barger Affidavit wherein Barger states that he spoke with Koba after she fell (Barger Aff., ¶¶ 4, 8) and also states:

> Although I was aware that Plaintiff fell while helping her sister with her walker into the restaurant, Ms. Koba did not state to me exactly how she fell, and I recall no mention of the mat being an issue for Ms. Koba.

Id. at ¶11.[16]

Plaintiff, in its Opposition to Defendant's Motion for Summary Judgment, has requested that this Court strike Barger's Affidavit because it allegedly directly contradicts his deposition testimony given three days before he executed the Affidavit. Doc. 30, p. 13. Plaintiff argues that, at a minimum, the portions of Barger's Affidavit that deal with whether he spoke with Koba after her fall and what was or was not said during any such conversation must be stricken as they directly contradict his deposition testimony. Doc. 30, pp. 13-14.

During his deposition, Barger answered "I don't know" when asked whether he had a conversation with Linda Koba on the day she fell. Barger agreed with his examiner that he had

---

[16] In its Opposition to Plaintiff's Motion for Summary Judgment, Ruby Tuesday relies on the Barger Affidavit to suggest that Plaintiff did not know what caused her fall:
 Not surprisingly, during their conversation, Barger does not recall Plaintiff mentioning any floor mat causing her to fall.... In fact, Plaintiff could not explain exactly how she fell to Barger."
Doc. 38, p. 7(citations omitted).

"no independent memory of what Linda Koba may have said" to him on that day.  Barger Depo at 21:4-25, 22:1-19.[17]

During his deposition, Barger also identified and was questioned about an Incident Detail Report form he filled in on the day of the accident.  The Incident Detail Report contains an Accident Description section that, on its face, appears to contradict Paragraph 11 of Barger's Affidavit.  In the Accident Description section, Barger reported: "Guest stated . . . . she tripped on rug."  Id., Ex. 2.  During his deposition, Barger stated that the information in the "Accident Description" portion of the Incident Report was given to him by "somebody from Linda Koba's party" whose relationship to Koba he could not specify other than to say "they were with her."  Barger Depo. at 22:6-19.

Defendant did not file a Reply Brief in support of its Motion for Summary Judgment and did not otherwise respond to Plaintiff's request that Barger's Affidavit be stricken until the Court issued a show cause order requiring it to respond.  Doc. 43.  In its response, Defendant argues that Barger's Affidavit should not be stricken because it "does not directly contradict Barger's previous deposition testimony" and, even if the Affidavit "could be directly contradictory, Ruby Tuesday can justify any perceived contradiction."  Doc. 45, p. 1.  In order to explain the discrepancy between Barger's deposition testimony that he didn't know whether he spoke with Koba and his Affidavit statement that he did, Defendant argues that, when Barger testified that he spoke with "somebody from Linda Koba's  party," that phrase included Plaintiff herself. p. 5.  The problem with this explanation is that, when asked what he meant by "somebody from Linda Koba's party," Barger did not say he was including Koba; he said he was referring to people who "were with her."  Barger Depo at 22:9-19.

---

[17] Koba testified that she did not recall saying anything to Barger about what caused her fall although she did speak with him as he helped her off the floor and onto a chair and advised her that an ambulance was on the way.  Koba Depo. at 85:15-25, 86:5-14, 87:3-8.

17

Ruby Tuesday's response further complicates and adds to the inconsistencies between Barger's Affidavit and his deposition testimony. Ruby Tuesday submits a Supplemental Affidavit from Barger. In it, he states that the Incident Detail Report is his best recollection of what was said after Plaintiff fell. Doc.45-2, PP. 8, 9. He also modifies his prior Affidavit statement that he recalls "no mention of the mat being an issue from Ms. Koba" by now stating, "I do know there was no complaint to me about a rug being folded over or buckled." Doc.45-2, P. 5. Ruby Tuesday's response also contends that the statement in Barger's Affidavit that "Ms. Koba did not state to me exactly how she fell, and I recall *no mention of the mat being an issue for Ms. Koba*" (Barger Aff. at ¶11) is "in line with", i.e., consistent with, the Incident Detail Report in which Barger stated, "Guest stated . . . . *she tripped on rug*…." Doc. 45, p. 5 (emphasis supplied). Ruby Tuesday asserts that "both show that Plaintiff did not say the rug caused her to trip." Doc. 45, pp. 5-6. In fact, on its face the statement in the Affidavit is directly contradictory to the statement in the Incident Detail Report.[18]

Upon review of Barger's statements in his Affidavit and the statements in his deposition and the Incident Detail Report, it is clear that there are inconsistencies and contradictions between the Affidavit and the deposition and Incident Detail Report. A court may strike a witness' affidavit that "directly contradicts" a witness' previous deposition testimony. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 908 (6th Cir.2006). In doing so, the Court should use a scalpel, not a butcher knife, striking only those portions of affidavits that do not satisfy the requirements of Rule 56(e). *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 593 (6th Cir. 2009); *Giles v. Univ. of Toledo,* 241 F.R.D. 466, 469 (N.D.Ohio 2007). Accordingly, it would be proper to strike the paragraphs of the Barger Affidavit regarding his alleged conversation with Koba

---

[18] Defendant's assertion that the Affidavit is consistent with the Incident Detail Report compels the Court to remind Defendant's counsel of their obligations under Rule 11 of the Federal Rules of Civil Procedure.

(Barger Aff. at ¶¶ 4, 8, 11). However, the Court in its discretion declines to strike the contradictory portions of the Barger Affidavit because those paragraphs would make no difference to the outcome of the Cross-Motions for Summary Judgment. See *Reid Mach., Inc. v. Lanzer,* 614 F. Supp. 2d 849, 868 (N.D. Ohio 2009) aff'd, 421 F. App'x 497 (6th Cir. 20)10). Accordingly, Plaintiff's request to strike (contained within Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Doc. 30, p. pp. 13-14) is dismissed as moot.

### III. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment (Doc. 23) and DENIES Plaintiff's Motion for Partial Summary Judgment (Doc. 35).

**IT IS SO ORDERED.**

Dated: March 28, 2014

Kathleen B. Burke
United States Magistrate Judge